UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Izuchukwu Umejesi, )
)
Petitioner, )
)
v. ) No. 22-cv-00251-SE
)
FCI Berlin, Warden, )
)
Respondent. )

WARDEN'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

Izuchukwu Umejesi ("Umejesi") is a federal prisoner at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). Umejesi has filed a § 2241 petition in this Court challenging the Bureau of Prisons' ("BOP") determination that he is ineligible for the application of First Step Act ("FSA") time credits due to his U.S. Immigration and Customs Enforcement ("ICE") detainer. Document Number ("DN") 1. Specifically, Umejesi argues that because he is the subject of an ICE detainer rather than a final order of removal, he is eligible for the application of his earned FSA time credits, which would result in his early transfer from custody to the supervised release portion of his sentence. *Id.* ¶¶ 3-8. Umejesi acknowledges that such a transfer would practicably result in his release to ICE custody. *See id.* at ¶ 8.

Umejesi's claim fails. The BOP's interpretation of the pertinent statutes and regulations prohibit the application of FSA time credits for prisoners with ICE detainers. While Umejesi disagrees with the BOP's interpretation of the FSA, the BOP is entitled to *Skidmore* deference on this issue and its position is consistent with the goals of the FSA and other BOP policies.

## I. FACTS

On May 24, 2021, the U.S. District Court for the Central District of California sentenced Umejesi for conspiracy to engage in money laundering to a 60-month term of imprisonment with a three-year term of supervision. Decl. of Robert Rouleau, attached as Ex. A, Sentence Computation Data at Attachment 1 ("Ex. A, 1"). Umejesi began serving his sentence at a BOP contract facility until April 6, 2022, when he was transferred to FCI Berlin. Ex. A, Admission-Release History at Attachment 2 ("Ex. A, 2"). On or about April 14, 2022, ICE lodged an immigration detainer against Umejesi. Ex. A, April 14, 2022 detainer at Attachment 3 ("Ex. A, 3"). Because of the detainer, the BOP refused to apply any alleged FSA time credits to Umejesi's sentence. Ex. A, 1. This §2241 Motion followed.[1]

## II. ARGUMENT

The Warden is entitled to summary judgment because Umejesi's alleged FSA time credits cannot be applied to his sentence due to his active ICE detainer. "Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). Because there is no genuine issue of material fact and the Warden is entitled to judgment as a matter of law, summary judgment should be granted, and Umejesi's Petition should be dismissed.

Under the FSA, prisoners earning time credits pursuant to the statute and who successfully complete programs aimed at reducing recidivism or other "productive activities" must have the time credits "applied toward time in prerelease custody or supervised release." 18

[1] While Umejesi conceded that he did not exhaust his administrative remedies, the Warden is not addressing this issue and is only arguing that Umejesi's substantive claim fails as a matter of law. *See* DN 1.

U.S.C. 3632(d)(4)(C). "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.*

Notably, the above statute anticipates circumstances where an inmate may be able to earn credits, but unable to apply them. Section 3624(g) defines who is eligible for the application of time credits. By defining an "eligible prisoner," the statute contemplates a prisoner who may be ineligible to apply his/her earned time credits. For example, prisoners can only apply their time credits if they are maintaining a minimum/low risk of recidivism. 18 U.S.C. 3624(g)(1)(B). Prisoners also must have credits in an amount equal to the remainder of their sentence. 18 U.S.C. 3624(g)(1)(C). Thus, as illustrated, a prisoner earning time credits is not entitled to automatically apply those credits.

In addition to the criteria identified in 18 U.S.C 3624(g), the FSA explicitly exempted certain inmates from applying FSA credits. One such category included inmates with a final order of removal from the United States. Specifically, the FSA provides:

> **(E) DEPORTABLE PRISONERS INELIGIBLE TO APPLY TIME CREDITS.–**
>
> **(i) In general**. – A prisoner is ineligible to apply time credits [toward prerelease custody or supervised release] if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).
>
> **(ii) Proceedings.** – The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

18 U.S.C. § 3632(d)(4)(E). The pertinent BOP regulations mirror the language of the FSA, distinguishing between inmates who are eligible to earn time credits and inmates who are eligible to apply them toward prerelease custody or supervised release. *See* 28 C.F.R. § 523.44. The

regulations specifically exclude inmates subject to a final order of removal from applying FSA time credits. 28 C.F.R. § 523.44(a)(2).

Umejesi recognizes that the statute excludes inmates with final orders of removal from applying FSA time credits. DN 1 ¶ 7. However, he argues that because he is not the subject of a final order of removal, his FSA time credits should be applied. *Id.*

Although the statutory language does not specifically mention inmates with detainers as excluded from applying FSA time credits to their sentence, the BOP can properly interpret statutes and provide guidance for their application. In doing so here and looking at the statute in its entirety, the BOP interpreted the statute to exclude inmates with ICE detainers from applying FSA time credits. *See* Ex. A, June 24, 2022 Memorandum of Assistant Director Catricia Howard at Attachment 4 ("Ex. A, 4").

While an agency's interpretation of a statute which has not been promulgated pursuant to the Administrative Procedure Act ("APA") is not entitled to full *Chevron* deference, it is nonetheless entitled to "some" deference and respect. *Reno v. Koray*, 515 U.S. 50, 61 (1995) ("BOP's internal agency guideline . . . is still entitled to some deference, since it is a permissible construction of the statute.") (internal citations omitted); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). In *Skidmore v. Swift*, 323 U.S. 134 (1944), the Court explained this lesser standard:

> [T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. 134, 140 (1944). The Court has developed this standard to include consideration of the agency's "care, its consistency, formality, and relative expertness, and [ ]the persuasiveness of the agency's position." *United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001).

In addition to the deference given to an interpreting agency, the Supreme Court has recognized that "courts are ill equipped to deal with . . . prison administration and reform," unless a prison regulation or practice "offends a fundamental constitutional guarantee." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) (overturned on other grounds). It is well settled that prisoners do not have a protected liberty interest in being assigned to a particular institution or program. *Moody v. Daggett*, 429 U.S. 78, 87 (1976) (addressing the impact of a detainer on prison programming); *United States v. Melendez*, 279 F.3d 16, 18 (1st Cir. 2002) (stating that the BOP is responsible for making inmate placement and program decisions); *Fox v. Lappin*, 409 F.Supp.2d 79, 88-89 (D. Mass. 2009) (finding no liberty interest in a prisoner's placement); *Gilmore v. Quay*, No. 20-CV-01291, 2021 WL 880430, at *4 (M.D.Pa. Mar. 9, 2021) (inmate with state detainer denied transfer to a Residential Reentry Center ("RRC") because "nothing in the Second Change Act, First Step Act, or §3621(b) entitles an inmate to any guaranteed placement in an RRC.").

Because the BOP's interpretation is soundly based on its "expertness," is consistent with other practices and policies, and does not offend a constitutional right, the BOP's interpretation of the statute is valid and should be given deference. Here, the BOP's interpretation excluding inmates with ICE detainers from applying time credits is forthcoming in a Program Statement on the FSA's application and is soundly based on BOP's logic and expertness. *See* Ex. 1. This Program Statement is expected to specify that prisoners with detainers cannot apply their FSA time credits until the detainer is resolved. *Id.* Currently, the BOP is operating pursuant to the

Assistant Director of BOP's Correctional Programs Division's June 24, 2022 memorandum which stated in relevant part:

> Under the First Step Act of 2018, inmates are eligible to earn Federal Time Credits (FTCs) which can be applied toward pre-release community placement and early release. To apply the credit earned, an inmate must otherwise be eligible to participate in pre-release placement. Therefore, an inmate must not have detainers or unresolved pending charges.

Ex. A, 4.

The BOP's interpretation excluding inmates with detainers from applying FSA time credits is an appropriate and proper interpretation of the law for many reasons. First, the position that an inmate with a detainer is ineligible for community placement or supervised release is not novel. BOP Program Statement 7310.04, *Community Corrections Center Utilization and Transfer Procedures*, § 10, provides: "Inmates in the following categories shall not ordinarily participate in CCC programs . . . Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement."[2] This particular provision has remained unchanged since the late 1990's. *See id*. Similarly, inmates with detainers are ineligible for the early release benefit of 18 U.S.C. § 3621(e) – even if they successfully completed the Residential Drug Treatment Program.[3] *See* BOP Program Statement 5331.02, *Early Release Procedures Under 18 U.S.C. § 3621(e)*, § 7(a). Inmates with detainers are also generally precluded from obtaining a furlough. *See* BOP Program Statement 5280.09, *Inmate Furloughs*, § 1(d)(2).[4]

---

[2] BOP Program Statement 7310.04, *Community Corrections Center Utilization and Transfer Procedures*, § 10, www.bop.gov/policy/progstat/7310_004.pdf (last visited August 19, 2022).
[3] BOP Program Statement 5331.02, *Early Release Procedures Under 18 U.S.C. § 3621(e)*, § 7(a), https://www.bop.gov/policy/progstat/5331.02.pdf (last visited August 19, 2022).
[4] BOP Program Statement 5280.09, *Inmate Furloughs*, § 1(d)(2), https://www.bop.gov/policy/progstat/5280_009.pdf (last visited August 19, 2022).

Accordingly, inmates with detainers have historically been ineligible for prerelease placement and supervised release. The BOP's position is no different here – an inmate with a detainer is ineligible for the application of FSA credits. *See* Ex. A. Additionally, Umejesi and those similarly situated were on reasonable notice concerning the effect of detainers on the application of FSA time credits based on how BOP has historically found such prisoners to be ineligible for prerelease placement.

Second, the purpose of an ICE detainer warrants the exclusion of inmates with detainers from applying FSA credits. ICE detainers "serve to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7. ICE detainers are issued pursuant to the authority found in a variety of statutes, including 8 U.S.C. § 1182. By excluding the application of FSA time credits to those who are subject to final removal and have a detainer, the BOP eliminated the possibility that an inmate whom ICE intended to deport is not accidentally released.

Third, the intended benefit of the application of FSA credits is inapplicable to an inmate with a detainer. One of the main purposes of community placement/supervised release is to prepare and assist an inmate with transition back into society. *See* 18 U.S.C. § 3624(c) (explaining "pre-release custody" affords prisoners with "a reasonable opportunity to adjust to and prepare for his re-entry into the community.").[5] This is consistent with the FSA's goal of recidivism reduction. *See generally* 18 U.S.C. 3632. However, an inmate with a detainer may be facing deportation or another prison sentence, not reintegration. *See McGee v. Fisher*, No. 12-CV-1108, 2012 WL

[5] *See also* https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last visited July 5, 2022) ("RRCs help inmates gradually rebuild their ties to the community and facilitating supervising ex-offenders' activities during this readjustment phase.").

5930666, at *1 (D. Minn. Oct. 22, 2012) (upholding BOP's decision not to send inmate with a detainer to a RRC because such placement "is for the purpose of preparing the inmate to transition back into the community at large; it is not designed to prepare the inmate for transition into state incarceration."). Accordingly, BOP's position regarding prisoners with detainers ensures FSA credits are applied to inmates who can reap the full benefits of them.

Specifically in this case, Umejesi will not likely be reintegrated into society. On August 24, 2022, staff at FCI Berlin confirmed that ICE intends to take custody of Umejesi upon his release from BOP custody. Ex. A ¶ 8. Umejesi himself recognized in his petition that even if his alleged FSA time credits were applied, he would be transferred to ICE custody. *See* DN 1 ¶ 8. Additionally, Umejesi will likely be subject to a final order of removal as he was convicted of conspiracy to engage in money laundering and such conduct is grounds for an alien's ineligibility to receive a visa and to be admitted to the United States. *See* 8 U.S.C. § 1182(a)(2)(I)(ii); Ex. A, 1.

Fourth, the detainer exclusion strikes a balance between incentivizing programming and rehabilitation opportunities and protecting society. Both the FSA and the corresponding regulation allow transfer to prerelease custody or supervised release only if a prisoner is not the subject of a final order of deportation, and/or if the prisoner is otherwise eligible for prerelease custody or early supervised release. *See* 18 U.S.C. §§ 3632(d)(4)(E), 3624(g)(1)(D); 28 C.F.R. §§ 523.44(a)(2), (c). In BOP's experience, prisoners with ICE detainers present a flight risk and have less incentive to reintegrate into society if they are facing further incarceration. *See McLean v. Crabtree*, 173 F.3d 1176, 1184 (9th Cir. 1999) (upholding BOP's rule excluding prisoners with ICE detainers from § 3621(e) early release because of the flight risk posed, finding this reasoning to be "rationally-based"); *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195-96 (5th Cir. 2012)

(finding no liberty interest in § 3621(e) early release and upholding BOP's position precluding ICE detainees from RRC placement as rationally-related to the legitimate interest in preventing prisoners from fleeing detainers). This determination is within the expertise of prison administrators. Indeed, as the Fourth Circuit observed: "The BOP, in running the nation's prisons, has accumulated experience and judgment that allows it to make informed decisions about various penological objectives, including punishment and rehabilitation." *Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001) (upholding the denial of a prisoner's early release under 18 U.S.C. § 3621(e) because BOP classified her crime as violent). Thus, the BOP has properly excluded prisoners with detainers from applying FSA time credits.

## III. CONCLUSION

The BOP's interpretation of the pertinent statute and regulation prohibits the application of FSA time credits for prisoners with ICE detainers. This interpretation is appropriate and consistent with other BOP policies and procedures, and the purpose of the FSA and ICE detainers. Given the BOP's expertise and experience in administering programming in the prison, and the *Skidmore* deference afforded to the BOP in its interpretation of the FSA, this Court should grant the Warden's Motion for Summary Judgment and dismiss Umejesi's Petition.

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: September 12, 2022

By: /s/ Heather A. Cherniske
Heather A. Cherniske
Assistant U.S. Attorney
NH Bar No. 19837
53 Pleasant Street, 4th Floor
Concord, NH 03301
603-225-1552
Heather.Cherniske@usdoj.gov