UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Izuchukwu Umejesi

   v.                                   Case No. 22-cv-251-SE

Warden, FCI Berlin

## REPORT AND RECOMMENDATION

Izuchukwu Umejesi, a federal prisoner incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), filed a petition for a writ of habeas corpus (Doc. No. 1) under 28 U.S.C. § 2241 alleging that the Federal Bureau of Prisons ("BOP") failed to apply First Step Act ("FSA") time credits he has earned to his sentence. Before the Court is Mr. Umejesi's supplemental memorandum (Doc. No. 26) to his petition, filed through counsel, which asserts that the BOP has failed to apply certain time credits petitioner was eligible to earn under the FSA between May 24, 2021 and November 24, 2021. Petitioner claims in his petition that if those time credits were to be applied to his sentence, he would be entitled to immediate release from BOP custody upon time served.

In his response (Doc. No. 29) to Mr. Umejesi's supplemental petition, the respondent counters that, under the BOP's regulation implementing the FSA, 28 C.F.R. § 523.42(a), Mr. Umejesi is entitled only to FSA time credits he has earned since

November 24, 2021, and that his release from BOP custody will not occur before August 1, 2023.[1]  For reasons stated below, the Court recommends that the District Judge grant Mr. Umejesi's § 2241 petition and direct the respondent to recalculate his time credits under the FSA to reflect that he was eligible to earn time credits beginning May 24, 2021.[2]

### Standard

A federal prisoner claiming he is "in custody in violation of the Constitution or laws or treaties of the United States" may petition the federal District Court for habeas relief.  28

---

[1] Although courts generally require prisoners to exhaust their BOP administrative remedies before filing § 2241 petitions challenging the BOP's execution of their sentence, see Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999), that common-law exhaustion requirement is subject to exceptions, including futility.  See, e.g., Idada v. Spaulding, 456 F. Supp. 3d 294, 297 (D. Mass. 2020).  At the February 27, 2023 hearing, the Warden advised the Court that he is waiving an exhaustion defense in this matter.

[2] If the BOP's recalculation of Mr. Umejesi's sentence results in his release from BOP custody prior to the District Judge's order accepting or rejecting the recommendations set forth herein, the recommendation that the petition be granted, and that Mr. Umejesi's sentence be recalculated accordingly, may not be moot, as Mr. Umejesi is subject to a period of supervised release.  See Yanagihara v. Derr, Civil No. 22-00145-JAO-RT, 2023 U.S. Dist. LEXIS 29038, at *8, 2023 WL 2163685, at *3 (D. Haw. Feb. 22, 2023) ("[A]s it is possible for [Petitioner] to receive relief in the form of a reduced or modified term of supervised release," from his sentencing court, § 2241 petition challenging BOP's failure to properly apply FSA time credits not rendered moot by prisoner's release).

U.S.C. § 2241(c)(3).  Section 2241 allows a federal prisoner "to challenge the execution of (rather than the imposition of) his or her sentence."  Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015).  The remedy under § 2241 has been traditionally available to prisoners challenging the computation of their sentences by the BOP.  See Thornton v. Sabol, 620 F. Supp. 2d 203, 206 (D. Mass. 2009).  The petitioner bears the burden of proving that his continuing detention violates his federal rights.  See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).


## Background[3]

On May 24, 2021, Mr. Umejesi was sentenced to a sixty-month term of imprisonment in the Central District of California.  See United States v. Umejesi, No. 2:19-cr-00380-RGK-4 (C.D. Cal. May 24, 2021).  After Mr. Umejesi was sentenced, he was transferred to facilities in Oklahoma and Mississippi before being transferred to a federal prison in Texas on November 24, 2021. He arrived at FCI Berlin on April 6, 2022.  Mr. Umejesi asserts that between May 24, 2021 and November 24, 2021, he was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in what

---

[3] The parties agree on the facts relevant to the Court's decision in this matter, as set forth in this Order, unless otherwise noted.

programming was available to him.  He further asserts that he
has maintained a low/minimum risk level for the duration of his
federal confinement.  The respondent has not disputed these
assertions.

Mr. Umejesi, who is the subject of a detainer lodged with
the BOP by United States Immigration and Customs Enforcement
("ICE"), filed this § 2241 petition in 2022 asserting that the
BOP had violated his rights under the FSA by failing to apply
any FSA earned time credits to his sentence because of his
detainer.  On February 6, 2023, after Mr. Umejesi initiated this
action, the BOP amended its policy to remove any bar to applying
FSA time credits to a prisoner's sentence based on the existence
of a detainer.  Accordingly, that issue has become moot.

However, Mr. Umejesi's claim that the BOP has failed to
apply FSA time credits he earned between May 24, 2021 and
November 24, 2021, remains at issue.  To facilitate resolution
of this matter, this Court issued an Order on February 22, 2023,
directing the respondent to file "up-to-date documentation of:
the petitioner's sentence calculation, FSA Time Credit
assessments, risk assessments, or any other matter impacting the
calculation of the petitioner's sentence."  Feb. 22, 2023 Order
(Doc. No. 28, at 2).  The Warden filed a response (Doc. No. 30)
to that Order.  The Court held a hearing in this matter on

February 27, 2022, at which both parties appeared through counsel.

## Discussion

I.    The First Step Act

On December 21, 2018, Congress enacted the FSA,[4] "with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism." United States v. Venable, 943 F.3d 187, 188 (4th Cir. 2019).  The FSA requires the BOP to implement a risk and needs assessment system to track each prisoner's risk of recidivism and to expand access to "productive activities" and other programs to reduce the risk of recidivism by federal prisoners.  18 U.S.C. § 3621(h).  The FSA also establishes incentives for successful participation in such programs and activities, including, at issue here, a new type of sentencing time credit to be applied towards the date of a prisoner's access to prerelease custody or a term of supervised release.  See id. § 3632(d)(4).

The FSA provides time credits for successful completion of evidence-based recidivism reduction programs ("EBRRs") and productive activities ("PAs").  See id. at § 3632(d)(4)(A).  The

---

[4] See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (enacted Dec. 21, 2018).

FSA requires that prisoners who complete EBRRs or PAS, "except an ineligible prisoner under subparagraph (D)," "shall earn time credits" for successfully completing such programming.  Id. at § 3632(d)(4)(A).  The FSA allows eligible prisoners to earn ten days of time credits, or in some cases, fifteen days of credits, for every 30 days of EBRRs and PAs they participate in while serving the custodial component of their sentences.  See id. § 3632(d)(4)(A), (B), (D).  FSA time credits, when applied, advance the date when the prisoner will be placed in "prerelease custody" (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release. See Hedges v. U.S. Marshals Serv., No. 5:22-cv-294-DCR, 2022 U.S. Dist. LEXIS 212385, at *3, 2022 WL 17177630, at *3 (E.D. Ky. Nov. 23, 2022); see also 18 U.S.C. § 3624(g)(3) (BOP may apply up to twelve months of earned time credits to advance the date a prisoner begins to serve a term of supervised release).

The FSA also prohibits certain prisoners, or prisoners in certain circumstances, from earning credits, and disqualifies certain prisoners who may earn credits from having those credits applied to their sentences.  Among such circumstances, as relevant here, the FSA prohibits prisoners from earning time credits during the period when he or she is in "official detention" but has not yet reached the date his or her "sentence

commences under [18 U.S.C. §] 3585(a)."  18 U.S.C. §
3632(d)(4)(B)(ii).

The BOP has promulgated regulations for executing and
administering time credits under the FSA.  See 28 C.F.R. §
523.40(a).  The stated purpose of those regulations "is to
describe procedures for the earning and application of Time
Credits as authorized by 18 U.S.C. § 3632(d)(4)."  Id.  The
regulation Mr. Umejesi challenges here, 28 C.F.R. § 523.42(a),
concerns the date upon which a prisoner can begin to earn FSA
time credits.  That regulation states:

> An eligible inmate begins earning FSA Time Credits
> after the inmate's term of imprisonment commences (the
> date the inmate arrives or voluntarily surrenders at
> the designated Bureau facility where the sentence will
> be served).

28 C.F.R. § 523.42(a).


II. *Chevron* **Analysis**

The parties here agree that the Court -- in considering Mr.
Umejesi's challenge to 28 C.F.R. § 523.42(a) as that regulation
has been applied to him, and the BOP's determination of the date
when he first was able to earn FSA time credits -- should decide
the matter by applying the two-step test set forth in Chevron
USA, Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842
(1984).  See generally Laparra-DeLeon v. Garland, 52 F.4th 514,
519 (1st Cir 2022).  "Under step one, we must determine whether

Congress spoke clearly to the precise question before us.  If

so, that is 'the end of the matter.'  If not, then we move to

step two, where we defer to the [federal agency]'s

interpretation of the statutory provision if it is reasonable."

Id.  (quoting and citing Chevron, 467 U.S. at 842-43).

Under Chevron, this Court first examines whether the plain

language of the FSA establishes the date upon which a prisoner

may start to earn FSA time credits.  And only if the Court finds

that the statute does not address that question will the Court

go on to consider the substance of the regulation itself.

The pertinent provisions of the FSA concerning when time

credits can -- and cannot -- be earned state the following:

**(4) Time credits.—**

> (A)  **In general.--**  A prisoner . . . who
> successfully completes evidence-based recidivism
> reduction programming or productive activities,
> shall earn time credits as follows:
>
> > (i)  A prisoner shall earn 10 days of time
> > credits for every 30 days of successful
> > participation or productive activities.
> >
> > (ii) A prisoner determined by the [BOP] to
> > be at a minimum or low risk for
> > recidivating, who, over 2 consecutive
> > assessments, has not increased their risk of
> > recidivism, shall earn an additional 5 days
> > of time credits . . . .
>
> (B)  **Availability**. -- A prisoner may not earn
> time credits under this paragraph for an
> evidence-based recidivism reduction program that
> the prisoner successfully completed –

(i)  prior to the date of the enactment of [the FSA]; or

(ii) <u>during official detention prior to the date that the prisoner's sentence commences under section 3585(a).</u>

<u>18 U.S.C.</u> § 3632(d)(4)(A)-(B) (emphasis added).  Construed together, those provisions make it clear that prisoners "shall" earn time credits, at the statutory rate, for all qualified programs in which they successfully participate, except for the programs in which they participated while imprisoned either before the FSA was enacted, or in detention before the date when their "sentence commence[d] under 3585(a)."

Section 3632(d)(4)(B)(ii) points to 18 U.S.C. § 3585(a) to provide a definition of when a "sentence commences," for purposes of defining when the prisoner's post-enactment completion of a program would not entitle him or her to FSA time credits.  Section 3585(a) -- and § 3632(d)(4)(B) by its reference to that statute – specifies "the date the defendant is received in custody awaiting transport to" his initial BOP-designated facility as the date his or her "sentence to a term of imprisonment commences" for purposes of determining whether he can begin to earn FSA time credits.  For Mr. Umejesi, the parties have agreed that under § 3585(a), May 24, 2021 is the date his "sentence to a term of imprisonment commence[d]."

Section 523.42(a) does not mirror the language in the FSA defining when a prisoner can begin earning FSA time credits. Rather, that regulation specifies a different date as the date when a prisoner can begin to earn FSA time credits, namely, the date the prisoner ultimately arrives at his BOP-designated facility where his sentence will be served.  See 28 C.F.R. § 523.42(a).  When that regulation is applied to Mr. Umejesi, November 24, 2021 is the earliest date he could earn time credits despite the fact that his "sentence to a term of imprisonment commence[d]" on May 24, 2021.

The Court's Chevron inquiry starts, and ends, at step one in this case because the plain language of the FSA, and of § 3585(a), clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits.  There is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA.  There is also no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits.  The Court, therefore, must give effect to the statutory text.  See Laparra-DeLeon, 52 F.4th at 519; see also Chevron, 467 U.S. at 842-43.

Here, the date established by the plain language of the FSA, upon which Mr. Umejesi was entitled to begin earning FSA time credits, is May 24, 2021.  The regulation's definition of a

different date is contrary to the express language of the FSA. The respondent's interpretation of Mr. Umejesi's eligibility for earning time credits under the FSA, as expressed in 28 C.F.R. § 523.42(a), is not entitled to deference under <u>Chevron</u>, as it contravenes the plain language of the FSA, 18 U.S.C. § 3632(d)(4)(B)(ii).

Therefore, this Court finds that 28 C.F.R. § 523.42(a) cannot be applied to prevent Mr. Umejesi from earning time credits to which he is entitled under the plain language of the FSA. Mr. Umejesi is allowed to earn FSA time credits beginning on May 24, 2021. Accordingly, the District Judge should grant the petition (Doc. Nos. 1, 26), find that the regulation does not survive this Court's <u>Chevron</u> analysis, and direct the respondent to recalculate Mr. Umejesi's time credits.[5]

## Conclusion

For the foregoing reasons, the Court recommends that the District Judge approve this Report and Recommendation, and issue the following Order:

1. Mr. Umejesi's petition (Doc. Nos. 1, 26) is GRANTED.

---

[5] The court expresses no opinion regarding the application of the ICE detainer to Mr. Umejesi's circumstances.

2.    The respondent is directed to recalculate Mr. Umejesi's FSA time credits to include his eligibility for credits beginning on May 24, 2021, and to release him on the date established by that recalculation.

3.    The clerk's office is directed to terminate all pending motions in this case, enter judgment and close the case.


_____
Andrea K. Johnstone
United States Magistrate Judge

March 16, 2023

cc:  Cathy J. Green, Esq.
     Seth R. Aframe, Esq.