UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

IZUCHUKWU UMEJESI       )
                        )
       v.               )          Docket No. 22-cv-251-SE
                        )
WARDEN, FCI BERLIN      )
_____)

WARDEN'S OBJECTION TO REPORT AND RECOMMENDATION

I.     INTRODUCTION.

Using notice and comment rulemaking, the Bureau of Prisons (BOP) adopted regulations to guide the implementation and execution of the risk and needs assessment system mandated by the First Step Act (FSA).  The FSA requires the BOP to implement a risk and needs assessment system to track each prisoner's risk of recidivism and to expand access to evidence-based recidivism reduction programs and productive activities. 18 U.S.C. § 3621(h). To meet this mandate, Congress ordered the BOP to provide "evidence-based recidivism reduction programs and productive activities."  Id. § 3621(h)(2). Inmates can earn time credits for completing these programs and activities that can be applied towards prerelease custody or early commencement of supervised release. 18 U.S.C. § 3632(d)(4)(A).

The FSA provides that a "prisoner many not earn time credits . . . for an evidence-based reduction program during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii).  Section 3585(a), in turn, provides that a sentence commences when imposed if the person is already detained.   Under BOP regulations for the implementation of § 3632(d)(4)(B), "an eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate

arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)." 28 C.F.R. § 523.42(a).

The legal issue presented here is the validity of 28 C.F.R. § 523.42(a). Umejesi was in custody of the United States Marshal when he was sentenced on May 24, 2021. Umejesi arrived at his BOP-designated facility on November 24, 2021. Pursuant to the regulation, the BOP began granting Umejesi FSA time credits starting on November 24, 2021. Umejesi argues that the FSA requires the BOP to start granting him time credits from the date of his sentencing; therefore, he says, the BOP regulation is invalid because it conflicts with the FSA. Accordingly, Umejesi contends that the BOP must start awarding him time credits from May 24, 2021.

II.  THE REPORT AND RECOMMENDATION.

The magistrate judge recommends that the Court invalidate the regulation on the ground that it conflicts with the plain language of the FSA. In making this recommendation, the magistrate judge relied exclusively on 18 U.S.C. §§ 3632(d)(4)(A) and (B). Those sections provide as follows:

> (d)(4)  **Time credits. —**
>
> **(A)  In general.** – A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earned time credits as follows:
>
> (i)  A prisoner shall earn 10 days of time credit for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii)  A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credit for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

> **(B) Availability. --** A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed ---
>
> * * *
>
> (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

18 U.S.C. § 3632(d)(4).

The magistrate judge read these sections as unambiguously requiring the BOP to grant FSA time credits to a detained defendant from the date the defendant is sentenced. The judge's reasoning was that the "shall" provision in § 3632(4)(A) means that prisoners must earn FSA time credits for successful participation in evidence-based recidivism programming or productive activities no matter when or where those programs occur, except for the limitations identified in § 3632(4)(B)(ii), i.e., before a detained defendant's sentence commences under § 3585(a), i.e., the day sentence was imposed. Based on this reading of § 3632(d)(4), the magistrate judge concluded the BOP does not have the power to limit the award of FSA time credits for programming until after the prisoner arrives at his BOP-designated facility. Accordingly, the judge recommends that this Court rule that 28 C.F.R. § 523.42(a) is invalid and that Umejesi should be awarded time credits from the date that he was sentenced.

III.   THE FSA DOES NOT EXPICITLY SET A
       <u>START DATE FOR ACCRUING FSA TIME CREDITS</u>.

The magistrate judge correctly evaluated the validity of the BOP's regulation setting the start date for accruing FSA credits under the familiar three-step analysis for evaluating the enforceability of a regulation. At the first step, the court assesses the statutory text to determine "whether Congress has directly spoken to the precise question at issue. If so, courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Lovegren v.</u>

3

Locke, 701 F.3d 5, 21 (1st Cir. 2012).  Second, if Congress's intent is uncertain, the court must decide whether and to what extent the agency's interpretation is entitled to deference.  Id. And last, the court evaluate the agency's regulation under the governing standard to determine whether it "exceeds the bounds of the permissible."  Id.

Here, Umejesi does not contest either the second or third aspects of the inquiry.  The only issue is whether Congress has spoken directly to the precise question at issue – namely, has Congress said explicitly that the BOP must start to give detained defendants FSA time credits from the date they are sentenced?  The magistrate judge's recommended answer is yes.  That decision rests on the use of the word "shall" in 18 U.S.C. § 3632(d)(4)(A), interpreting it to require BOP to award time credits for any completed programming no matter whether the inmate took the programming before reaching his BOP facility.

To be sure, "shall" generally connotes a mandatory duty.  Kingdomware Tech., Inc. v. United States, 579 U.S. 162, 172 (2016).  But the magistrate judge's mistake was not her reliance on the mandatory nature of "shall"; rather it was to view § 3632(d)(4)(A) as being a section that was concerned with when FSA time-credits would be available.  Section 3623(d)(4)(A) is not about when credits are available; it is about how a prisoner earns credits and how many credits a prisoner can earn.  In this regard, the statute sets mandatory requirements for BOP to grant credits for qualified prisoners who engage in certain designated programming.  Thus, BOP does not have the discretion to deny credit for the completion of a designated program unless specifically authorized to do so (e.g., § 3632(e)), and the BOP cannot alter the amount of time credit that a prisoner receives for completed programming or activities – those amounts are set in statutory stone.

Section 3632(d)(4)(B), however, is the provision concerned with when an inmate can start to receive FSA time credits for the programming identified in § 3632(d)(4)(A). And this section does not establish a time for receiving credits in statutory stone. If Congress wanted to create a mandatory time for BOP to start granting time credits, it easily could have said, "the Bureau of Prisons shall grant time credits for all evidence-based recidivism reduction programs that the prisoner completes during official detention after the prisoner's sentence commences under section 3585(a)." Had Congress drafted the statute in this manner, it would be an explicit command that the BOP grant time credits from the sentencing date forward.

But that isn't what the statute says. Instead, the provision sets a floor on when BOP can award time-credits. That is, the statute says that a prisoner "may not" earn FSA time credits for programming that the prisoner completed before sentence was imposed. Thus, the statute sets a "no earlier date" for the opportunity to earn time credits but does not set a mandatory requirement that BOP start granting time credits from this earliest possible date.

The approach Congress chose leaves the start date for granting FSA time credits ambiguous. That approach aligns with the way that prisoner transportation occurs. When a detained defendant is sentenced in a federal court, the United States Marshal, through the JPATS program, is responsible for moving that defendant to his designated BOP facility. https://www.usmarshals.gov/resources/fact-sheets/2022-prisoner-transportation Most of the U.S. Marshal facilities used for holding inmates are not BOP facilities and, even when housed at a BOP facility for transport, the prisoner is not in BOP custody. Thus, the prisoner will not be in BOP custody until the prisoner actually arrives at the BOP designated facility. Reading the FSA, as a whole, shows that Congress' intent in passing the FSA was for the prisoner to obtain credits

by completing BOP courses after the BOP assesses a prisoner's risk level and needs. Numerous provisions make Congress' intention clear:

- 18 U.S.C. § 3631(a) -- "In general. - The Attorney General shall carry out this subsection in consultation with The Director of the Bureau of Prisons."

- 18 U.S.C. § 3632(a)(1) -- "The Attorney General . . . shall develop a risk and needs assessment system, which shall be used to . . . determine recidivism risk of each prisoner as part of the intake process and classify each prisoner as having minimum, low, medium or high risk of recidivism."

- 18 U.S.C. § 3632(d)(2) -- "A prisoner who is successfully participating in an evidence-based recidivism reduction program shall be considered by the Bureau of Prisons for placement in a facility closer to the prisoner's release residence upon request from the prisoner and subject to –
    (A) bed availability at the transfer facility;
    (B) the prisoner's security designation; and
    (C) the recommendation from the warden of the prison at which the prisoner I incarcerated at the time of making the request."

- 18 U.S.C. § 3632(d)(3) -- "The Director of the Bureau of Prisons shall develop additional policies to provide appropriate incentives for successful participation and completion of evidence-based recidivism reduction programming. The incentives shall include not less than two of the following:
    (A) Increased commissary spending limits and product offerings.
    (B) Extended opportunities to access the email system.
    (C) Consideration of transfer to preferred housing units (including transfer to different prison facilities).
    (D) Other incentives solicited from prisoners and determined appropriate by the director."

- 18 U.S.C. § 3632(d)(4)(A)(ii) -- "A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."

- 18 U.S.C. § 3632(d)(4)(C) -- "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."

- 18 U.S.C. § 3632(e) -- "Penalties. - The Director of the Bureau of Prisons shall develop guidelines for the reduction of rewards and incentives earned under

       subsection (d) for prisoners who violate prison rules or evidence-based recidivism reduction program or productive activity rules, which shall provide –
          (1) general levels of violations and resulting reductions;
          (2) that any reduction that includes the loss of time credits shall require written notice to the prisoner, shall be limited to time credits that a prisoner earned as of the date of the prisoner's rule violation, and shall not include any future time credits that the prisoner may earn; and
          (3) for a procedure to restore time credits that a prisoner lost as a result of the rule violation, based on the prisoner's individual progress after the date of the rule violation."

- 18 U.S.C. § 3632(f) -- "Bureau of Prisons training. - The Attorney General shall develop and implement training programs for Bureau of Prisons officers and employees responsible for administering the System, which shall include –
    (1) initial training to educate officers and employees on how to use the System in the appropriate and consistent manner, as well as the reasons for using the System;
    (2) continuing education;
    (3) periodic training updates; and
    (4) a requirement that such officers and employees demonstrate competence in administering the System, including interrater reliability, on a biannual basis.

- 18 U.S.C. § 3632(g) -- "Quality assurance. - In order to ensure that the Bureau of Prisons is using the System in an appropriate and consistent manner, the Attorney General shall monitor and assess the use of the System, which shall include conducting annual audits of the Bureau of Prisons regarding the use of the System."

These provisions, and many others like them within the FSA, demonstrate that Congress intended for this system of awarding time credits to be managed by the BOP. The risk assessments, the evidence-based recidivism reduction programs, and the productive activities are for the BOP to design, manage, and implement. The magistrate judge's interpretation would require the BOP to make credits potentially available for programming done outside of BOP's auspices. BOP has no knowledge of the content of these programs or control over how they are administered. The BOP also would not have a chance to determine whether these programs are

consonant with the defendant's needs.  None of these outcomes of the magistrate judge's recommendations are consistent with the overall spirit and purpose of the FSA.

In short, the FSA does not create a mandatory date after which the BOP must award FSA time credits.  Congress left the question of when a defendant must start earning credits open by mandating only that credits can't be awarded before the date on which a defendant is sentenced.  Given the goals of the FSA, the BOP reasonably determined that credits should not be made available to a defendant until they arrive at their BOP-designated facility so that the BOP can identify and provide the programming that fits the defendant's particular needs, which was Congress' primary goals in adopting the FSA.

IV. <u>CONCLUSION</u>.

For the reasons stated, the magistrate judge's report and recommendation erroneously recommends that this Court declare 28 C.F.R. § 523.42(a) invalid on the ground that it conflicts with 18 U.S.C. § 3632(d)(4).  This Court should uphold the regulation and deny Umejesi FSA time credits for the period between his sentencing and his arrival at his BOP-designated facility.

                Respectfully submitted,

                JANE E. YOUNG
                United States Attorney

Dated: March 24, 2023      /s/ Seth R. Aframe
                Seth R. Aframe
                Assistant United States Attorney
                53 Pleasant Street, 4th Floor
                Concord, NH 03301